Good morning, your honors. Amy Field on behalf of defendants and appellants, Steven Moody and I'm sorry, Robert Polito. I have to say you must be very highly regarded within your office because they really hand you the tough cases. Go on. I'm not sure if you want a response. No, I just complimented you. We're a tiny section and we're actually very overwhelmed with cases. So it's pretty much down to two attorneys to handle all these civil liability appeals on police cases. Before I go to the merits of my argument, I would like to very briefly raise the impact Mr. Walker's death has on these proceedings. I'm not really sure what the impact is. I tried to do a little research on it yesterday, but I do have some concerns that we don't have a plaintiff appellee here. Typically, we would have given that Mr. Walker died in September. By now, we would have substituted his estate for him and that should have been done. And I assume it's going to be done because there is obviously an estate that has a judgment at this point. And his death didn't move this case. So let's just move forward and then we'll take up the question of the procedural requirements here. Sure, of course. To me, this case boils down to two pretty simple and straightforward and well-established principles of law. First, I think it's very clearly established that the Brady rule protects the right to a fair trial. And every circuit that has considered the possibility of a Section 1983-based Brady claim says that you have to, at a minimum, have had a trial to implicate the Brady rule. But the instruction that was given to the jury didn't mention Brady and did have a deliberate disregard element which isn't part of Brady. So it really wasn't a Brady theory that went to the jury anyway. Well, I don't know if I agree with that, Your Honor. I mean, this case was clearly to the point that there's no deliberate disregard part of Brady. There's no deliberate disregard part of Brady unless you're in the context of a Section 1983 claim, and that's under Tennyson. But even under Tennyson, we were talking about a case where, I mean, you still have to isolate the constitutional right that's at issue and the protection that's afforded. Well, right, but you don't have to isolate a case, right? In other words, you have to isolate it for purposes of legal argument. But in terms of what went to the jury and the theory on which it went to the jury, it had elements. And the question is, does that make out a constitutional case? Now, does it make out a Brady case under the Brady Supreme Court law? Well, I guess I would say, Your Honor, two theories went to the jury. And the other principle that I think is clearly established is that when you're talking about a pretrial deprivation of liberty, which is really what Mr. Walker's claim was based on, it's well established that the Fourth Amendment provides adequate procedural protections for pretrial deprivations of liberty. Well, even saying that's true. The other case, the other part that went to the jury was a very specific malicious prosecution-based theory. It wasn't the Fourth Amendment in general. So it doesn't seem productive to me to divide the world into binary, binarily, if that's a word, here. The question is whether what did go to the jury on the second element,  either under the Fourth Amendment or under the Fourteenth Amendment or something, and not whether it's A or B, necessarily. Well, and that's exactly my point, Your Honor, is that it doesn't make out a viable cause of action under the Fourteenth Amendment, because the case that went to the jury on the second claim, the withholding of exculpatory evidence, the elements that were given, there's no law to support that the materiality is just measured against whether the result would have been different in the proceedings. It has to be measured against whether it would have undermined probable cause, because probable cause is the touchstone for a pretrial deprivation of liberty. Kagan. Well, it did eventually undermine probable cause, didn't it? I'm sorry? It did eventually undermine probable cause, didn't it? Not according to the jury. The jury found for the court. Well, that's not true either, because the jury was told that there were other elements to the malicious prosecution claim, so it could easily have not rested on probable cause. They had to find malice under the malicious prosecution claim. And an additional constitutional deprivation. Well, that's true, Your Honor. But as a base point, you have to measure the materiality against something. And when you're talking about a pretrial deprivation of liberty, it has to be measured against the probable cause standard, and it wasn't on the second claim. But in fact here, once this information got to the prosecutor in toto, he understood that there wasn't probable cause. I'm sorry? Once the information got to the prosecutor in toto and was able to be investigated by the lawyers and got to the prosecutor, everybody understood that there wasn't probable cause. In fact, there was not probable cause. And they knew it a lot earlier. They knew three days after they arrested Mr. Walker that, in fact, the demand note robberies had not stopped because there was another one, and yet they represented to the court in filings, in preliminary hearings, in order to hold over Mr. Walker, that the demand note robberies had stopped. That's correct. So they thought they falsely concealed evidence from the court that undermined the probable cause. But if it had undermined the probable cause. And I'm not sure if it did undermine the probable cause. I mean, it didn't be the demand note robber. I disagree with that, Your Honor. They knew that the demand, that some demand note robberies continued, but we still have to find it. But they stated it to the contrary. See, that's not the problem. There was a flat lie here. It wasn't simply a question of not providing affirmative information. There was a flat lie. And that flat lie, according to the lawyers for the defendant, was the reason why there was a two-year delay in finding out the truth, because they chose quite sensibly to believe what they were told, at least initially, and so they, or for quite a long So it's not just a question of there was probable cause if you believed their lie, but it was a lie. I think there was probable cause even if you, even factoring that statement in, because you still had the identification by, identifications by eyewitnesses to the robberies that Mr. Walker was charged with. So I don't think that the prosecutor had known the actual truth, that Moody and Polito knew when they knew it that this prosecution would have gone forward. Well, I mean, that's another point I'd like to raise, and it was raised during the trial. I don't think that the fact that the two other robberies happened after Mr. Walker's arrest was so shocking that it would have drawn them. No, and that somebody was arrested, and that it was possible to test that person's fingerprints, and if you tested them, it turned out that it was him. But you didn't have anybody to test the fingerprints against until much later. It wasn't much later. No, that was September 15th. It was before either of the preliminary hearings. It was a month later, and it was before both of the preliminary hearings. What did you appeal from? I'm sorry? What did you appeal from? From the denial of Rule 50b motion. For judgment as a matter of law, right? Correct. What if there was a cause of action that could be pursued under the facts, and the judge just gave erroneous instructions? Motion for judgment as a matter of law would be denied, would it not? I'm not sure. So there was no alternative motion for a new trial? I suppose there could have been. I suppose that, yes, it could have been based on an instructional error, that the instructions that were given were not supported in the law. So if there is a 1983 claim based on the kind of conduct that occurred here, you lose? I'm not sure if I'm following the Court's question. I'm sorry. Well, my point is that you're saying that judgment should be entered in favor of the officers because there was no 1983 claim that was viable, right? Correct. If there was a 1983 claim that was viable, but the Court just improperly instructed on that, you would lose your motion for judgment as a matter of law, would you not? I think so. Do you want to save some time for rebuttal? Sure. All right. Good morning, Your Honors. John Burton for the plaintiff. In terms of the capacity of the plaintiff, I do apologize to the Court for the late notice of the suggestion of death. Counsel, I've never seen a document called suggestion of death. It's tracking the language of Federal Rule of Appellate Procedure 43A1. Shouldn't you just have substituted in the estate? Yes, and that will happen. And there was a trust. Mr. Walker had cirrhosis. He created a trust in favor of his mother, and we're working with the probate attorneys to perfect that. And it was supposed to be done before the hearing, and it wasn't. And I apologize to that, and we can get it done within the next few weeks. But I think it's correct that there's nothing that is mooted. And as I read Rule 43A1, the procedure of the court directing that the proper party be substituted. Can you do that right away, please? We will do that, of course. Thank you. We'll do that next week. In terms of the merits here, we believe that this is an extremely egregious case and extremely egregious misconduct, and that a blanket rule that concealing or withholding evidence is only actionable if a criminal accused, in this case the civil rights plaintiff, is actually tried and convicted would be overbroad and would miss. Well, there's the Brady claim, which is after trial. There's a malicious prosecution claim, which is what? I mean, when does that cut off? Well, I think a malicious prosecution claim has these very strange elements. And we do believe that the withholding of evidence, it is in the nature of a Brady claim, this court, in fact, in an opinion offered by yourself. Yeah, but that was about a judicial proceeding. And the only way that you could stuff this case into that, and maybe you could, and the question is, is it adequate, would be with regard to the preliminary hearings. That is, I gather this information was available at the time of the preliminary hearings and wasn't brought forward then. So maybe you could stuff it in that way because it was a proceeding. But I don't know about that. Well, I think that's absolutely correct. There were two preliminary hearings. There was also the motion for the live lineup. Right. And had the court, when it ordered the live lineup, which resulted in two additional misidentifications of Mr. Walker as a demand note robber, known that, in fact, these demand note robberies had continued at a rather rapid pace and there were something like a dozen or so. Well, is the disclosure, I mean, and the question is, if it were the preliminary hearing, is that a malicious prosecution claim or nothing? I don't know. But that's related to whether or not the, well, I guess to answer that question. In other words, if we were looking at the preliminary hearings, would it have to fit into a malicious prosecution mold? No, Your Honor. We disagree with that. We feel very strongly, and this is based on Professor Avery's article on this subject, that when one is being deprived of liberty, which is a fundamental 14th Amendment interest, one must go no farther than the text of the amendment, that procedural due process includes the fact that police officers who are investigating crimes must turn over to the prosecutor not only the incriminating evidence but also the exculpatory evidence. See, now, so this, when I read all these briefs, I thought, why are we talking about Brady? We have the Fourth Amendment and we have the 14th Amendment, and probably you have theories under both to make out your 1983 claim, and the law is pretty much clearly against you that you've got to go to trial before you can assert the Brady claim. So why are we reaching out to go there when you've got a lot of authorities supporting either a Fourth Amendment or a 14th Amendment claim? Well, we disagree that that's what Brady says. There are two lines of Brady cases. There are Brady criminal cases, which invariably arise on appeals from convictions, and there the measure is always whether or not. You know, we understand your argument, but I think we're suggesting that you can win in an easier way. So you just want us to go out in this? No. No, I want to win in as easy a way as possible, Your Honor. So, but to begin, so looking at what they were actually instructed or what they could have been instructed in perhaps a more fine-cut way, they were not, and leaving aside, you know, whether this fits into a Brady box but doesn't fit into a constitutional box that isn't, I mean the only thing you have to have is something that isn't malicious prosecution and is somehow related to the instructions that were actually given, whatever Supreme Court case it derives from or none. And so beginning with that, I guess I want to know about the Supreme Court Albright case and how does that influence how we look at where the rights are coming from here and does it matter? Albright seems to say that any pretrial thing is going to be a Fourth Amendment issue. Well, I think that Albright, which the Court knows did not command a majority opinion, has to be read in light of subsequent cases and particularly Wallace v. Cato, which was decided in 2007 and from my practice is not one of my favorite cases. But that's the case that held the Fourth Amendment liability terminates when the judicial process begins. And we cited that in our brief. And for statute of limitations purposes, it would seem to be anomalous to say that the cause of action accrues when the judicial process against the accused is initiated, but that the Fourth Amendment continues somehow beyond that. I think another recent Supreme Court case that clarifies this is the Osborne case, which is a recent Judge Roberts opinion that has to do with post-conviction DNA access rights. And he writes in that opinion that the right to exonerating evidence pretrial is protected by procedural due process. Another case I would invite the Court's attention to. So the bottom line, though, is you're saying there's no Fourth Amendment claim, it's a Fourteenth Amendment claim? I think the bottom line is I don't think it matters. And I was about to address that. There is a case, and I don't agree with this comment that there's no pretrial quote Brady unquote claim. And I think we're using the term Brady here very loosely to mean liability based on concealing or withholding. All right. So if you want to call it that, that's fine. But it's not directly covered by the Brady line of case. It's shorthand for when the police officers or detectives conceal or withhold exculpatory information. But you see, this is the problem. If you thought this was really directly related to Brady, there would be some obligation to come forward with the evidence to the lawyers, not to the prosecutors, not to the court, at some undefined point. I'm not sure what that point would be. And it would appear to be opening up a major can of worms. Now, here we have a lot of additional factors. A, we have lies, not simply not coming forward. B, we have keeping it from the prosecutor as well as from the lawyers and from the courts when it was relevant. And so at three, we have a jury instruction in which deliberate indifference was required and found. So I don't see – none of those things would be true in a Brady situation. And if you wanted to actually run off Brady, you'd have to tell us to whom does it have to be disclosed, when does it have to be disclosed, and so on. Well, I think Tennyson, to a certain extent, answers some of those questions. Tennyson was post-trial. So this court recognized a civil cause of action based on the withholding of evidence. And in that case, the evidence that was withheld by the detectives arose after the conviction of the defendants for murder. A third party confessed to having committed those murders after the conviction to other detectives. And then the detectives who were working with the prosecution in that case did not turn that over to assist the defense in their post-trial motions, and that caused something like 10 years of incarceration before they were finally released. So – on a habeas, I believe, to this court. So it is a question of when the information is of use to the defense. And in this case, the detectives had the information within days. They knew he was not the demand note robber. They should have let him go. That's what the claim boils down to. It's not that they needed to turn over the information to the prosecutors or – over to prosecutors to have him released. But by September 15th, which is one month after he was placed into prison, they knew that he was not the demand note robber, that someone else was. At least Pulido did. And thereafter, they kept him in prison another 26 months. I would agree with the court other than I would say that they were not keeping him in jail. There was legal process keeping him in jail, and they were not providing the – they were concealing. They were lying to the court to ensure that the legal process gets him in jail. Exactly. They were lying. They were saying that the robberies ended with Mr. Walker's arrest, when, in fact, they continued for another month. The problem is slightly more complicated than that. I mean, your opposing counsel says there was still probable cause, by which I think she means they hadn't spun off – they hadn't done the rest of the investigation that the – his attorney eventually did. I mean, they knew that they – I mean, there could have been two people running around doing demand note robberies in the same place at the same time. And it wasn't until – but you had to know that there was a – that stated in bold that the car rape spree was over was not true. But that still doesn't prove that there weren't two people doing it. The ultimate proof that there weren't two people doing it was when you spun out the investigation, found the – and found that it was Stanley Smith's fingerprint at the store in the robbery vault which this guy was being charged. They hadn't done all of that. They could have done all of that. So the question is it is sort of a disclosure issue more than simply they should have let him out at that point. They should have either done more themselves or given it to other people who could have done more with it. All we're contending is they should have turned over to the prosecutor all the evidence they had that was inculpatory and exculpatory.  So not to the lawyer. So that's another reason it's just isn't a Brady claim because Brady is about turning stuff over to the lawyer. Well, Brady originally arose with the obligation of the prosecutor to turn over exculpatory information to the defense. Right. However, Brady has been expanded and the law is now well settled that it includes the obligation of the police to turn over the exculpatory evidence to the prosecutor. Well, meaning that there's no excuse. The prosecutor doesn't have an excuse if he doesn't have it because it's the government as a whole. But that's a different way of looking at it. It's not an affirmative obligation to turn it over to the prosecutor. It's just that you're not going to be any better off if you don't. Exactly. And the prosecutors testified in our trial and they all testified that they didn't get this material and had they gotten this material. And when they finally did get this material, they turned it over promptly. And then as the material was analyzed and assimilated, it became obvious that there was absolutely no basis to hold this man. And in fact, the trial court entered a finding of factual innocence. It wasn't. It went beyond no probable cause. But the second of this term, this is on California criminal discovery law. I mean, I gather that whether or not there is any federal obligation, there was a California obligation. Is that right? To turn over the information. I mean, I don't know. It appears from the interactions here that, and I don't know, I was never a criminal lawyer in California, that there seems to be a statutory obligation to hand over exculpatory information as it develops. Could I have one second, Your Honor? Sure. My co-counsel, Ms. Cavalluzzi, who is a criminal defense attorney by background, says that I believe it's 1054 of the Penal Code does require the disclosure of information. Well, I'm wondering how that feeds into a cause of action here, i.e. they were, you know, it's not just a question of violating state law, but they did have an obligation, and they, again, not only didn't do it, but lied about it. So I'm wondering whether there's anything specific to the California situation. Well, we believe that the federal law arising in the line of Brady cases, which goes way beyond the holding of Brady itself, covers this situation. So when you say Brady, you mean a due process right to get information in certain ways at certain times? Right. And Your Honor wrote United States v. Gomez-Urduño, which found that Brady applied to information to be used at a suppression hearing. Right, because there was a hearing. Well, there's a hold. The question here is, so either you attach it to the preliminary hearing, or you say even after the preliminary hearings, when the guy was in prison for two years or in jail, and they were still sitting there with the information, there's still a problem, whether there was a preliminary hearing or wasn't a preliminary hearing. Well, as we explained in our brief, the criminal process itself is a whole series of decision points, which includes the arraignment, bail, preliminary hearings. And there were two preliminary hearings in this case, because at one point the charges were dismissed and then refiled. Right. And then the motion for the live lineup. At each of those hearings, the jury was argued to the jury. And, by the way, there was only a motion for judgment as a matter of law. There was no new trial motion. At each of those points, the plaintiff argued that would have come out different. The result of the case would have been different had the officers not withheld and concealed. And there's an act of concealment here. Right. What does the act result of the case mean? I mean, there was no case. Or at least there was no trial. What you're saying is it would have been let out of jail. Exactly. But there was a case. There was People v. Walker. You're exceeding your time now. And so I think we should sit down and hear the rebuttal from this Court. Thank you, Your Honor. I'll try and make it brief, Your Honors. First of all, I'd like to respond to the Wallace v. Cato. Wallace v. Cato does say that once criminal charges, once the process begins, it's no longer a Fourth Amendment claim. But it also goes on to say that it's a malicious prosecution claim. Not all circuits recognize 1983 malicious prosecution claims. This circuit does. The plaintiff pled a malicious prosecution claim, and he lost on that. So that's kind of out of the mix. As far as whether the police officers kept the information from the prosecutors, I would like to point out that the same deputy district attorney that filed the charges against Mr. Walker also filed the charges against Stanley Smith. So the prosecutor's office was also on notice that these crimes were continuing, that had similar perpetrator descriptions. So should they have been sued, too? They had to be, because they absolutely had to be. Unless they knew it was false information. And finally, two more points. I disagree with the Court that once the police officers learned about the Goldenberg robbery and the Burger King robbery, they knew that Mr. Walker could not have committed the robberies he was charged with. They knew that it wasn't true that the chain of robberies had ended. I'm sorry. But they did know it wasn't true that the chain of robberies had ended. That's correct. There was testimony at trial that they then considered the possibility that there were several demand note robbers in the L.A. area. And I don't think that's suspect. But the statement written in bold in two different reports which found their way to the lawyers that said that the crime spree ended at that point seems to have been fairly directly responsible for the fact that the attorneys were deflected from what they would otherwise have been doing, which is to try and find out if there were. And that's how he ended up in jail for two more years. Well, I mean, I agree with the Court that that bold-faced statement would have been fantastic impeachment evidence against Officer Moody. Your ultimate position is that there is nothing to be done about this. That even if they were deliberately indifferent and even if the jury was right that they were deliberately indifferent but not malicious to meet the malicious prosecution. I mean, they weren't after them. They were just deliberately indifferent. That there's nothing to be done about it. That's your position in the end. It sounds really harsh. I don't mean to sound unsympathetic to Mr. Walker's plight. However, I do think it has to be measured against probable cause. And there's simply not a 1983 cause of action to right every wrong. It rights constitutional wrongs. And here the Constitution must comply with the ---- Kagan, I don't understand the probable cause position. I'm sorry? I don't understand the probable cause position because that isn't how it went to the jury. The jury could have believed there was not probable cause, couldn't it have? Could have believed that there was not probable cause. I don't think so. I think that that was a necessary element of the malicious prosecution claim. You're saying, oh, that they could have found probable cause but no malice. I suppose. I suppose. But I think that ---- I still don't think that this case was litigated as a Brady claim. I mean, that's what the instructions were based on. I know the Court doesn't want me to put this into a Brady box, but Brady is the case that says that gives you the procedure to protect your due process record. Kagan. But what about the argument that it at least applies at any judicial proceeding, including the preliminary hearings and motions? I'm not certain of that. I think it comes up. I think Brady has been applied when it comes up in a preliminary hearing or a suppression hearing and the evidence is not suppressed, and then the case marches on to trial. And had that evidence been disclosed early on during the pretrial proceedings and the case wouldn't have marched on to trial, we wouldn't be dealing with post-criminal trial relief, which is, I believe, what was happening in the Gammes. I'm not sure of the pronunciation of it, or Dinas, but the one Mr. Burton just referred to.  If there were not probable cause here and the jury determined that there was not malicious prosecution for whatever reason other than not a lack of probable cause, is there any claim that would exist? Well, I don't think there is, Your Honor. I think that's the point. And I think that the plaintiff was grabbing at Brady as a viable theory, and it's just not viable. I mean, every court has held that. So what are we left with? We still have to identify what the constitutional right is that's at issue. And it's got to be a Fourth Amendment right. It has to be. That's what we're talking about. All right. Thank you, counsel. Thank you for the very excellent argument on both sides. Walker v. Moody and Polito is submitted, and we will take up McGee v. Kirkland. Yeah, we're going to take a two-minute break, five-minute break before we take up the last case. It's been a long morning. All right.
judges: Whyte, Wardlaw, Berzon